```
         IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                              *
WILLIAM J. TSAI
                              *
     Plaintiff,
                              *
v.                                   CIVIL NO.: WDQ-06-1937
                              *
MARYLAND AVIATION
ADMINISTRATION,               *

     Defendant.               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

William J. Tsai has sued the Maryland Aviation Administration (the "MAA") for national-origin-based employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964,[1] as amended ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17.  Pending is the MAA's motion to dismiss or, in the alternative, for summary judgment.  For the following reasons, summary judgment will be granted.

I.  Background

Tsai, a resident of Simpsonville, Maryland, and originally from Burma, is employed as an Administrator II, grade 17, by the MAA, a Maryland agency that owns and operates Baltimore/Washington International Thurgood Marshall Airport in Linthicum,

---

[1] Pub. L. No. 88-352, 78 Stat. 253.

1

Maryland.  Compl. ¶¶ 2-4; Pl.'s Ex. A at 14, 15.  The MAA has employed Tsai since 1986.  Compl. ¶ 4.

Tsai alleges that, from 1997 through 2001, the MAA engaged in various discriminatory conduct against him, including denying his several applications for promotion and requests for reclassification of his position to a higher paygrade, and, because of his age, national origin, and in retaliation for prior Equal Employment Opportunity ("EEO") activity by Tsai in 1996.  Compl. ¶¶ 5-15, 19-21.

In May 2000, Tsai filed a charge of discrimination against MAA with the Maryland Commission on Human Relations and the U.S. Equal Employment Opportunity Commission (the "EEOC").  *Id*. ¶ 16 In September 2000, the EEOC authorized Tsai to file a civil suit against the MAA, which he did in the Circuit Court for Howard County, Maryland in December 2000.  *Id*. ¶¶ 17-18; Def.'s Mot. Ex. E (Tsai's Third Amended Complaint from the 2000 suit).  Tsai filed further charges with the EEOC in January and November 2001 alleging additional retaliatory conduct by the MAA.  Compl. ¶ 19-21.

In May 2002, Tsai and the MAA entered into a Settlement Agreement and General Release (the "Settlement Agreement").  Def.'s Mot. Ex. A.  The MAA paid Tsai $10,000 and promoted him to his current position, and Tsai dismissed with prejudice his civil suit and charges with the EEOC.  *Id*. ¶¶ 1.1-1.5; Def.'s Mot. Ex.

C (stipulation of dismissal with prejudice).

On October 21, 2003, Tsai submitted an application for a reclassification of his position from Administrator II, grade 17, to Administrator IV, grade 19.  Compl. ¶ 22.  On February 17, 2004, Tsai received notice of the MAA's rejection of his application, which he alleges was without proper justification. Pl.'s Opp'n 8.

On November 26, 2004, Tsai submitted a document to the EEOC that was in part his responses to the EEOC's Charge Information Questionnaire (the "Questionnaire"), and which stated his claims of national-origin discrimination and retaliation against the MAA.  Pl.'s Opp'n Ex. A.  On January 10, 2005, the EEOC sent a Notice of Charge of Discrimination to the MAA, notifying them of Tsai's charges.  Pl.'s Opp'n Ex. B.  On January 24, 2005, Tsai signed his EEOC Charge of Discrimination against the MAA, alleging discrimination base on his age, race, national origin, and in retaliation for prior EEO activity.  Def.'s Mot. Ex. B.

On November 30, 2005, the EEOC issued Tsai a notice of his right to sue the MAA, and on February 17, 2006, Tsai filed his Complaint in the Circuit Court for Howard County, Maryland. Compl. 1, ¶ 24.

On June 29, 2006, the MAA received a copy of the Summons and Complaint, and on July 27, 2006, it removed the case to this Court for federal-question jurisdiction under 28 U.S.C. §§ 1331

and 1441.

II. Discussion

The MAA argues that: (1) Tsai's claims are time-barred because he filed his administrative charge with the EEOC after the statutory deadline; (2) Tsai's claims are barred by the terms of the Settlement Agreement, collateral estoppel, and *res judicata*; and (3) the undisputed material facts do not support Tsai's claims, entitling the MAA to summary judgment.

A.  Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss for failure to state a claim for relief should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).

If the court considers matters outside of the pleading on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, to be disposed of under Rule 56, and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b). "When a party is aware that material outside the pleadings is before

4

the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."

*Anderson,* 477 U.S. at 257.  The mere existence of a "scintilla" of evidence is insufficient.  *Id*. at 252.  If the nonmoving party fails to show an essential element of his case on which he will bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P. 56(e).

B.  Procedural Defenses

1.  Timeliness

The MAA argues that the most recent alleged act of discrimination occurred on February 17, 2004, when Tsai received notice of the MAA's denial of his reclassification request, and the date of his Charge of Discrimination, January 24, 2005, falls beyond the 300-day deadline for filing a charge with the EEOC.

Tsai concedes that he had notice of the alleged discrimination on February 17, but contends that the EEOC determined his completed Questionnaire was a sufficient charge of discrimination on December 1, 2004, 288 days after the notice of the MAA's denial was received.

Before an employee may sue his employer for unlawful discrimination under Title VII, he must exhaust his administrative remedies.  *Laber v. Harvey,* 438 F.3d 404, 415 (4th Cir. 2006).  The aggrieved employee must first timely file an

6

administrative charge against the employer with the EEOC.  42 U.S.C. § 2000e-5(f)(1); *E.E.O.C. v. Hansa Products, Inc.*, 844 F.2d 191, 192 (4th Cir. 1988).  For the charge to be timely filed in a "deferral state,"[2] such as Maryland, it must be filed with the EEOC within 300 days of the last alleged act of misconduct.  42 U.S.C. § 2000e-5(e); *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001).

Title 42 U.S.C. § 2000e-5(b) requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(b).

The EEOC's regulations require a charge to be in writing, signed, and verified, and define "verified" to "mean sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements [sic], or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. §§ 1601.3(a) and 1601.9.  "An unverified but otherwise valid charge may be verified after the time for filing a charge has expired."  *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002).

An EEOC questionnaire may constitute a valid charge if it

---

[2]  A deferral state is one "which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice."  42 U.S.C. § 2000e-5(c).

7

contains the information required by the EEOC's "minimal standard" in 29 C.F.R. § 1601.12(b): "[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *Valderrama v. Honeywell Tech. Solutions*, 473 F. Supp. 2d 658, ___ (2007); *see Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 92 (4th Cir. 1982) (affidavit satisfying the requirements of 29 C.F.R. § 1601.12 constituted a charge); *Edelman*, 300 F.3d at 404 (timely but unsworn letter satisfying section 1601.12 may constitute a charge if later supplemented with a sworn charge).

The EEOC's January 10, 2005 Notice of Charge of Discrimination to the MAA states that "[d]ocumentation constituting a minimally sufficient charge of discrimination was received by EEOC on 12/01/04." Pl.'s Opp'n Ex. B. Tsai's Questionnaire included a four-page Selection Questionnaire to which he provided detailed written answers regarding the MAA's denial of his requested reclassification, the identities of the involved parties, and his allegations of discrimination. Pl.'s Opp'n Ex. A at 5-8. Tsai signed the Selection Questionnaire under the penalty of perjury on November 24, 2004, and the eventual Charge of Discrimination prepared by the EEOC was signed by Tsai under the penalty of perjury and sworn before a notary on

January 24, 2005.  *Id*. Ex. A at 8; Def.'s Mot. Ex. B.

The Court finds that the Questionnaire was properly verified pursuant to 29 C.F.R. §§ 1601.3(a) and 1601.9 and, as the EEOC also found, constituted a sufficient charge under 29 C.F.R. § 1601.12 when it was received on December 1, 2004, 12 days before the 300-day filing deadline.  Accordingly, the MAA's timeliness defense fails.

2.  The Settlement Agreement, Collateral Estoppel, and *Res Judicata*

The MAA argues that the terms of the May 2002 Settlement Agreement and the doctrine of *res judicata* bar Tsai's discrimination claims.

Section II of the Settlement Agreement releases the MAA "from any and all claims . . . which Mr. Tsai now has or in the future may have arising out of his employment *to date* with MAA." Def.'s Mot. Ex. A ¶ 2.1 (emphasis added).  The Settlement Agreement has no effect on claims arising after its execution date, May 6, 2002: "The waiver and release provisions set forth in Section II above are not an attempt to cause Mr. Tsai to waive or release rights or claims that may arise after the date this Agreement is executed by him."  Def.'s Mot. Ex. A § VI.

Tsai concedes that the terms of the Settlement Agreement bar any claim arising from the MAA's conduct prior to May 6, 2002.

9

He maintains, though, that the MAA's subsequent conduct, specifically, its denial of his reclassification request in February 2004, supports his discrimination claims.

Although the MAA admits that the Settlement Agreement only bars claims arising out of its actions prior to May 2002, and that its 2004 denial of Tsai's reclassification request was not part of Tsai's prior suit, it nevertheless argues that Tsai's causes of action are issue- and claim-precluded.

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1314-15 (4th Cir. 1996). The doctrine of *res judicata* "encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel." *Id*.

Claims in a subsequent suit may be precluded when they "are based upon the same cause of action involved in the earlier proceeding." *Id*. "Generally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts." *Id*. at 1316 (citations omitted).

Issue preclusion is more narrow than claim preclusion, and "operates to bar subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily

10

determined by a court of competent jurisdiction in the first litigation." *Id*. "Collateral estoppel forecloses the relitigation of an issue of fact or law if certain requirements are met," one of which is that "the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Martin v. American Bancorporation Retirement Plan,* 407 F.3d 643, 653 (4th Cir. 2005).

The MAA does not explain how the alleged discriminatory conduct in 2004 arose out of the same transaction or core of operative facts litigated and settled in 2002, or how Tsai would have had a full and fair opportunity to litigate the factual issues related to the MAA's 2004 denial of reclassification back in 2002.[3]  Accordingly, Tsai's discrimination claims are not entirely barred by the Settlement Agreement or under *res judicata*. However, as Tsai concedes, his causes of action are limited to the MAA's conduct subsequent to the Settlement Agreement.

C.  Substantive Merit of Claims

1.  Analysis Framework

Title VII protects employees from workplace discrimination: (1) based on the employee's race, color, religion, sex, or

---

[3] Perhaps realizing its error, the MAA tacitly abandons its *res judicata* arguments in its Reply.

national origin (42 U.S.C. §§ 2000e-2(a)); or (2) in retaliation for opposing unlawful discrimination practices or engaging in EEO activity under Title VII (42 U.S.C. § 2003e-3(a)).

A plaintiff may avoid summary judgment on a Title VII discrimination claim via "two avenues of proof": (1) by establishing through direct or circumstantial evidence a genuine issue of material fact concerning whether the prohibited characteristic motivated the employer's adverse employment action; or (2) by the "pretext" framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The pretext framework "'compensat[es] for the fact that direct evidence of intentional discrimination is hard to come by'" by "giv[ing] plaintiffs who lack direct evidence a method for raising an inference of discrimination."[4] *Diamond,* 416 F.3d at 318 (*quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in the

---

[4] The Fourth Circuit noted that the pretext framework "is of little value when direct evidence of discrimination is available." *Diamond,* 416 F.3d at 319 n.4.

12

judgment)).

a.  Establishing a *Prima Facie* Case of Discrimination

To proceed under the *McDonnell Douglas* pretext framework, the plaintiff first must raise an inference of unlawful discrimination by proving a *prima facie* case by a preponderance of the evidence.  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

b.  Defendant's Production of Rebuttal Evidence

After the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a non-prohibited reason for the adverse employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Id*. (citation omitted).  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."  *Evans*, 80 F.3d at 960.  If the defendant carries this burden of production, the presumption of intentional discrimination is rebutted and "drops from the case."  *Burdine,* 450 U.S. at 255, 255 n.10.

13

c.  Establishing Pretext

Once a defendant articulates a legitimate reason for an adverse employment decision, a plaintiff must show that the employer's reason is mere pretext for an unlawful discriminatory motive.  *Dennis v. Columbia Colleton Medical Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002).  To prove pretext, a plaintiff must either show that the employer's explanation is "'unworthy of credence'" or offer other evidence that is sufficiently probative of intentional discrimination.  *Mereish v. Walker* 359 F.3d 330, 336 (4th Cir. 2004) (*quoting Burdine*, 450 U.S. at 256).  "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against [him]."  *Evans*, 80 F.3d at 959; *accord Burdine*, 450 U.S. at 256.

2.  Analysis

Assuming, without finding, that Tsai has presented evidence of a *prima facie* disparate-treatment claim, the MAA has provided evidence of a legitimate reason for its denial of Tsai's reclassification request, and Tsai has failed to produce affirmative evidence of pretext to survive summary judgment.

The MAA contends that Tsai's reclassification request was evaluated by a job classification officer using a multi-factor Position Appraisal Method (the "PAM") that used only non-discriminatory criteria to conclude that reclassification was not

14

appropriate.  The evidence for the MAA's rebuttal is provided by Tsai with his opposition memorandum, which includes as an exhibit a report of the PAM analysis (the "PAM Report") performed by Rod Grimes, a classification officer in the MAA's Compensation Section, for Diane Walker, the MAA's Classification and Compensation Section Chief.  Pl.'s Opp'n Ex. A at 11-14. Applying eight legitimate factors, including the position's required knowledge, scope of responsibility, effect of decisions, problem-solving complexity, and application of authority, the PAM Report concludes that the requirements of Tsai's position do not support a reclassification to Administrator IV, Grade 19.  *Id*. at 11-14.

Tsai alleges that he was qualified for the higher pay grade, that his reclassification was recommended by four of his superiors, and that Walker and Eric Christensen, whose position at the MAA is unclear, incorrectly performed the PAM analysis.[5] Compl. ¶ 22-23, 27, 34.

As evidence of his supervisors' recommendations, Tsai provides a memorandum by his immediate supervisor, Hamid Gazy, to his upper-level supervisors Andrew Hriz and Wayne Pennell, recommending Tsai's reclassification.  Pl.'s Opp'n Ex. A at 17-

---

[5] As stated above, the PAM Report shows that the analysis was actually done by Grimes and forwarded to Walker.  Pl.'s Opp'n Ex. A at 11.  Tsai does not allege that Grimes knew of his national origin or prior EEO activity.

15

18.  Although Gazy's recommendation states that Tsai "exceeds the Position Description of an Administrator IV . . . in all areas," it provides no comparison of Tsai's present duties to those required of an Administrator IV to support that conclusion.  *Id*. at 17.  Moreover, Gazy's description of Tsai's duties is paraphrased by the PAM Report in its analysis of Tsai's position, which the PAM Report then uses to rate the position's requirements and determine the appropriate classification.  *Compare id*. at 11 (PAM Report's "Job Analysis") to *id*. at 17 (Gazy's description).  Tsai provides no explanation why he believes the PAM analysis was incorrectly performed, nor any other evidence to support his conclusory allegation that the PAM Report was a pretext for unlawful discrimination.

The MAA's PAM Report demonstrates a legitimate reason for the averred adverse employment decision, and Tsai has failed to produce evidence such that a reasonably jury could find that the conclusion of the PAM Report is unworthy of credence.  Accordingly, the Court will grant summary judgment for the MAA.

III.  Conclusion

For the reasons stated above, the MAA's motion for summary judgment will be granted.

April 23, 2007                              /s/
Date                              William D. Quarles, Jr.
                                  United States District Judge

16